IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| CYRIL K. RICHARD, | Cause No. CV 15-63-M-DLC-JCL |
|---|---|
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| BOYD ANDREW, et al., | |
| Respondents. | |

This case comes before the Court on Petitioner Cyril K. Richard's application for writ of habeas corpus under 28 U.S.C. § 2254. Richard is a state prisoner proceeding pro se.

On June 30, 2015, the Court ordered Respondents ("the State") to file certain documents from the record of proceedings in the state courts. Order (Doc. 5) at 2-3 ¶¶ 2-5. The State complied on July 24, 2015.

**I. Preliminary Review**

The petition is subject to preliminary review. *See* Rule 4, Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 Rules"). If, on the face of the petition and any attached exhibits, it is not clear whether the petitioner is entitled to relief, the judge "must order the respondent to file an answer, motion, or other response . . . or to take other action." As noted, the Court directed the State to file certain documents from the record of the proceedings in state court.

1

A petitioner is "expected to state facts that point to a real possibility of constitutional error." Rule 4, § 2254 Rules, advisory committee's note (1976) (quotation marks omitted) (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)); *see also Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) (Schroeder, C.J., concurring). "[I]t is the duty of the court to . . . eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, § 2254 Rules.

Considering the claims in Richard's federal petition in light of the state court record, it is clear that he is not entitled to relief. There is no need to obtain an Answer or motion from the State.

## II. Background

Richard was originally charged with one count of deliberate homicide, a violation of Mont. Code Ann. § 45-5-102(1)(a) (2007), and one count of tampering with evidence, a violation of Mont. Code Ann. § 45-7-207(1)(a), in connection with the death of Michael Meadows. Information (Doc. 7-3) at 1-2. Pursuant to a plea agreement, *see* Plea Agreement (Doc. 7-5), Richard pled guilty to an Amended Information charging him with one count of negligent homicide, a violation of Mont. Code Ann. § 45-5-104, and two counts of tampering with evidence. *See* Am. Information (Doc. 7-4) at 1-2; Minutes (Doc. 7-6). Richard also waived the right to appeal and the right to sentence review, and the right to pursue

postconviction relief, including claims of ineffective assistance of counsel. *See* Plea Agreement (Doc. 705) at 8. On June 16, 2010, Richard was sentenced to a total of 40 years in prison, with 20 of those years suspended. Written judgment was entered on June 24, 2010. Judgment (Doc. 7-9) at 2. Richard did not appeal. Richard's conviction became final on August 23, 2010. *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012).

On August 16, 2011, Richard filed a petition for postconviction relief in the trial court. He alleged that he could not be required to register as a violent offender, despite agreeing to do so in the plea agreement. The trial court denied relief, and Richard appealed. On October 30, 2012, the Montana Supreme Court affirmed the denial of relief. Order at 5 ¶ 11, *Richard v. State*, No. DA 12-0213 (Mont. Oct. 30, 2012). A timely petition for rehearing was denied on December 18, 2012. Order at 1, *Richard*, No. DA 12-0213 (Mont. Dec. 18, 2012).

On March 19, 2015, Richard filed a petition for writ of habeas corpus in the Montana Supreme Court. He asserted that he acted in self-defense and therefore is actually innocent of negligent or any other homicide; that he should, under principles of double jeopardy, have been convicted of only one count of tampering with evidence; the trial court erred in denying his motion to suppress; and that his sentence is cruel and unusual. *See* State Habeas Pet. (Doc. 1-1) at 5-9, *Richard v.*

*Berkebile*, No. OP 15-0172 (Mont. Mar. 19, 2015).[1] On March 31, 2015, the Montana Supreme Court dismissed his habeas petition on procedural grounds because the writ of habeas corpus is not available under Montana law to challenge the validity of a criminal judgment. *See* Order at 2, *Richard*, No. OP 15-0172 (Mont. Mar. 31, 2015); Mont. Code Ann. § 46-22-101(2).

Richard filed his federal petition for writ of habeas corpus on May 25, 2015. Pet. (Doc. 1) at 8; Pet'r Decl. ¶ C; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule).

### III. Claims and Analysis

Richard attached his state habeas petition to his federal petition. Although his first two claims are the same in each petition, it is not clear whether he intends to allege, in federal court, the third and fourth claims that are alleged in his state petition. In an abundance of caution, the Court will assume that is what he meant to do.

All of Richard's claims are untimely by about two and a half years. They are also procedurally defaulted, because Richard never presented them in a legally cognizable form in the courts of the State of Montana. Notwithstanding these obvious procedural defects, it is clear that Richard's claims lack merit. It is more

---

[1] This petition and other documents filed in or by the Montana Supreme Court are available on the court's website, http://supremecourtdocket.mt.gov (accessed Nov. 5, 2015). Page five is missing from Richard's postconviction petition as posted on the website, but it is included with his federal petition.

efficient to address them on that basis. *See, e.g.*, *Herbst v. Cook*, 260 F.3d 1039, 1043-44 (9th Cir. 2001); *Boyd v. Thompson*, 147 F.3d 1124, 1128 (9th Cir. 1998).

Richard's claims are reorganized here, but all are addressed.

**A. Actual Innocence**

Richard alleges that he is actually innocent of homicide because he acted in self-defense. Pet. at 14 ¶ 13B.[2] But "[f]ederal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). "Once a defendant has been afforded a fair trial[3] and convicted of the offense for which he was charged, the presumption of innocence disappears." *Herrera v. Collins*, 506 U.S. 390, 399 (1993). Assuming a State may not hold in custody a person who demonstrates he is innocent of the crime of conviction, *id.* at 400-02, because

---

[2] Richard claims his conviction violates the Second Amendment, which protects Richard's right to "keep and bear Arms," U./S. Const. amend. II, presumably including a pocketknife. *See, e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 581-82 (2008) (defining "Arms" as "'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another'") (quoting Timothy Cunningham, 1 *A New and Complete Law Dictionary* (1771)). While it is clear the Second Amendment does not license anyone "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *Heller*, 554 U.S. at 626, it is not clear exactly what is and is not prohibited. For instance, while a municipality may not implement a "ban on handgun possession in the home" or a "prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense," *id.* at 636, it will still be the case that "some measures regulating handguns" will be constitutionally acceptable.

Richard might, therefore, raise a federal question as to whether Montana's law on justified use of force runs afoul of the Second Amendment. Without suggesting that any such argument would have merit, it is enough to point out that he does not raise that question. Instead, he claims he "acted within" Montana's laws authorizing use of force. *See* Pet. at 5 ¶ 13B(i). This is a claim of actual innocence, not a claim alleging a Second Amendment violation.

[3] Richard's other claims for relief allege, in one way or another, he did not receive a fair trial. They must be dealt with on their own merits. In this claim, Richard asserts that he is entitled to federal habeas relief because he is innocent.

5

Richard was convicted, he now has the burden of proving that *no* rational juror could find he did *not* act in self-defense.[4] At trial, Richard would have had to prove, by a preponderance of the evidence, that he used "force likely to cause death or serious bodily harm" in the "reasonabl[e] belie[f] that the force [was] necessary to prevent imminent death or serious bodily harm" to himself. Mont. Code Ann. § 45-3-102, -115 (2007). All available evidence, including any that might be ruled inadmissible, must be considered. *Schlup v. Delo*, 513 U.S. 298, 328 (1995).

Richard's ability to prove his affirmative defense would have been gravely undermined by other available testimony and evidence. Richard told police that he broke his right arm when Meadows pushed him into a rocking chair, causing him to fall to the ground. *See* Paul Aff. in Supp. of Information (Doc. 7-2) ("Paul Aff.") at 4; *see also* Richard Aff. at 4 (Doc. 1-1 at 23); Emergency Room Report at 1-2 (Doc. 1-1 at 17-18). Richard also said that he wrested the pocketknife away from Meadows, who nonetheless charged at him again, unarmed. Richard then stabbed Meadows. He passed out for a period of time, then, when he regained

---

[4] The *Herrera* Court did not expressly decide what the burden of proof should be, but one year later, in *Schlup v. Delo*, 513 U.S. 298 (1995), the Court held that a *Herrera* claim would have to meet a higher standard than a *Schlup* claim. *Schlup* required the petitioner to show, by a preponderance of the evidence, that no reasonable juror would convict him in light of the new evidence as well as all the other evidence relevant to the case. *See Schlup*, 513 U.S. at 316, 327-28. Therefore, it appears the *Herrera* standard requires a petitioner to show clear and convincing evidence that no reasonable juror would convict him. Richard is not entitled to relief under either standard.

consciousness, he panicked, loaded Meadows' body into his car, stopped briefly for gas and cigarettes, drove to a location west of Missoula, and dumped Meadows' body in the Clark Fork River. Richard Aff. at 4-6; Paul Aff. at 4-5, 6, 7. But a surveillance camera at the gas station where Richard stopped for gas and cigarettes showed him using his right arm to pump gas and make payment while, according to Richard, Meadows lay dead in the car. The clerk also recalled that Richard had fresh blood on his forehead and hands. *See* Paul Aff. at 5-6. As for Richard's undeniably broken arm, a neighbor heard a man scream, as if in great pain, at 5:00 a.m., and again, but more faintly, sometime later. *Id.* at 6-7. This was the time when Richard, according to his own account, was attempting to clean up the significant quantity of blood that spilled from Meadows' body as Richard conveyed it to his car.

If the State had introduced Richard's statement to police, the surveillance footage, the clerk's testimony, and the neighbor's testimony, it is unlikely that *all* reasonable jurors would agree Richard probably acted in self-defense. Some might; but others might consider the State's testimony and evidence, along with Richard's failure to call 911 and his attempt to conceal Meadows' death, as evidence that he did not act in self-defense and/or did not truly or reasonably fear death or serious injury at Meadows' hands.

Richard adduces no new evidence. Only he and Meadows were present at

7

the altercation. Meadows cannot testify, and Richard's incentive to testify favorably to himself is clear and obvious enough that any reasonable juror might disbelieve what he says. Therefore, Richard has no realistic prospect of proving, by a preponderance of the evidence, that *no* reasonable juror would find him guilty beyond reasonable doubt. His first claim for relief should be denied.

**B. Double Jeopardy**

Richard asserts that he was guilty of only one count of tampering with evidence because his evidence-tampering was one continuous course of conduct. Pet. at 4 ¶ 13A; *see also*, *e.g.*, *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *State ex rel. Booth v. Twenty-First Jud. Dist. Court*, 972 P.2d 325, 328-31 ¶¶ 11-25 (Mont. 1998); Mont. Code Ann. §§ 46-1-202(23).

But Richard charge-bargained. In the Amended Information, the State added a second charge of tampering with evidence, dropped the charge of deliberate homicide, and added a charge of negligent homicide. Plea Agreement (Doc. 7-5) at 1-2. The maximum penalty for deliberate homicide was death, or life in prison, or ten to 100 years. Mont. Code Ann. § 45-5-102(2) (2007). The maximum penalty for evidence tampering was ten years. *Id.* § -7-207(2). Under the original Information, therefore, the maximum possible sentence Richard faced was death, life in prison plus ten years, or 110 years. Under the Amended Information, the maximum possible sentence Richard faced was 40 years.

8

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). By agreeing to plead guilty to the Amended Information, Richard waived his protection against double jeopardy. In exchange, he received a 100% guarantee he would not be sentenced to more than 40 years in prison; and, in fact, although he received a 40-year sentence, 20 of those years were suspended. There is no reason to believe Richard could have obtained the benefits of the plea agreement without waiving whatever double jeopardy protection he would have had against a second charge of evidence tampering. Richard's second claim for relief should be denied.

**C. Motion to Suppress**

Richard claims the trial court erred in denying his motion to suppress the statements he made to police officers after his release from the hospital, when he was "highly intoxicated, heavily medicated . . . sever[e]ly injured, suffered from PTSD, [was] sleep deprived and had no lawyer present." State Habeas Pet. (Doc. 1-1) at 7. For his relief, he asks that his "statements to detectives be suppressed from the court records and be inadmiss[i]ble in any court proceedings." *Id.*

Again, because Richard "solemnly admitted in open court that he is in fact

9

guilty of the offense with which he is charged," he waived "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Henderson*, 411 U.S. at 267. Richard specifically and "expressly" waived his right to appeal, Plea Agreement (Doc. 7-5) at 8, including, but not limited to, his right to appeal the trial court's denial of his motion to suppress. And again, there is no reason to believe Richard could have obtained the benefit of the plea agreement without waiving his right to appeal the denial of his motion to suppress.

This claim should be denied.

**D. Cruel and Unusual Punishment**

Finally, Richard avers that his sentence of 40 years, with 20 suspended, is cruel and unusual in light of other States' imposition of significantly lesser terms for involuntary manslaughter. He points to California and the United States, jurisdictions that he avers impose penalties of two to five years for involuntary manslaughter. Richard concludes:

> Considering petitioner's case contains extensive mitigating factors present, in addition to substantial verifiable claims of self-defense and the justifiable use of force, the sentence imposed is clearly excessive. Factoring these profound mitigating circumstances, the sentence [is] disproportionate, and "a gross miscarriage of justice." . . .
> Therefore, petitioner asks that the Court grant the following relief: That the petitioner's sentence be corrected, by reducing it to a more reasonable proportionate term.

State Habeas Pet. (Doc. 1-1) at 8-9.

This claim is misguided. First, federal habeas courts do not reconsider or re-weigh the factors that contribute to state prisoners' sentences.

Second, Richard's sentence for negligent homicide is 20 years, not 40. Judgment (Doc 7-9) at 2; Mont. Code Ann. § 45-5-104(2). Half his total 40-year term was suspended, and his parole eligibility was not restricted. *Cf. Solem v. Helm*, 463 U.S. 277, 300-03 (1983). A Montana prisoner may apply for parole after he serves one-fourth of his prison term. *See* Mont. Code Ann. § 46-23-201(3). As a result, Richard will be eligible for parole after he serves five years, representing two and a half years on the negligent homicide charge.

Third, although this claim involves the sentence, it remains significant that Richard bargained for the negligent homicide charge. While negligent homicide in Montana might be comparable to involuntary manslaughter in California, cross-jurisdictional comparisons of available penalties are complicated. States define offenses differently. For instance, a California prosecutor could have charged Richard with involuntary manslaughter, but Richard might also have been charged with second-degree murder, *see, e.g.*, *People v. McNally*, 187 Cal. Rptr. 3d 391, 394, 396 (Cal. Ct. App. May 21, 2015), which carries a penalty of 25 years to life, Cal. Penal Code § 190(b). In other states, too, Richard might have been charged with offenses involving criminal negligence and entailing penalties similar to Montana's 20-year maximum for negligent homicide. *See, e.g.*, Fla. Rev. Stat. §§

782.07(1), 775.082(3)(d)) (15 years for killing by culpable negligence); S.D. Codified Laws §§ 22-6-1(3), -16-15(3) (life for unintentional killing with weapon); Tex. Penal Code Ann. § 12.33(a) 5.19.04(b) (20 years for manslaughter); Wash. Rev. Code §§ 9A.20.021(1)(b), -.32.060(1)(a) (life for reckless killing), -.070 (10 years for criminally negligent killing); Wyo. Stat. Ann. §§ 6-2-105(b), -109(a)(ii) (20 years for voluntary and involuntary manslaughter, or 30 years if victim was pregnant).

Fourth, also related to the charge-bargaining point, Richard agreed that he would recommend the statutory maximum sentence of 20 years for negligent homicide and 10 years on each witness tampering charge, with all terms to run concurrently and all time suspended, for a total sentence of 20 years suspended. *See* Plea Agreement (Doc. 7-5) at 2. His Eighth Amendment claim was, in effect, also waived by his plea agreement. There is no reason to think he could have obtained the benefit of the plea bargain without subjecting himself to 40 years in prison with no suspended time, as the State recommended, *id.*, but did not obtain.

This claim should be denied.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner

makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Richard never fairly presented to the state courts any of the claims in his federal petition, and the federal petition itself was filed about two and a half years after the limitations period expired. More fundamentally, however, Richard's claims for relief overlook the most important fact about his case: there was a real prospect a jury would convict him of deliberate homicide. Richard reached a favorable plea agreement with the State; the agreement substituted negligent homicide and an additional evidence-tampering charge for the deliberate homicide charge, reducing Richard's sentencing exposure from life or 120 years to just 40 years. To obtain the considerable benefit of this bargain, Richard waived his potential double jeopardy objection to the second evidence-tampering charge, his right to appeal the trial court's denial of his motion to suppress, and any argument he might otherwise have had that a 20-year sentence for negligent homicide is cruel and unusual. Although Richard now claims he is actually innocent because he acted in self-defense, he offered the self-defense explanation immediately upon his

arrest. His account was contradicted in significant respects. He was not particularly likely to prevail on self-defense at trial, and at this point, it is highly unlikely that *all* reasonable jurors would agree he probably acted in self-defense.

Reasonable jurists would not find that Richard's claims have merit. There is no reason to encourage further proceedings. A COA should be denied.

Based on the foregoing, the Court enters the following:

### ORDER

1. Richard's petition (Docs. 1, 1-1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT
### TO FINDINGS & RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Richard may object to this Findings and Recommendation within 14 days.[5] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Richard must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in

---

[5] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.

dismissal of his case without notice to him.

DATED this 10th day of November, 2015.

                                         */s/ Jeremiah C. Lynch*
                                         Jeremiah C. Lynch
                                         United States Magistrate Judge